UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JOSEPH ANTONETTI,

    Plaintiff,

v.        Civ. No. 21-1202 MIS/GJF

JOHN GAY, et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on pro se Plaintiff's Motion for Temporary Restraining Order [ECFs 5, 9] ("Motion"). The Motion is fully briefed. *See* ECFs 17 (Response), 21 (Reply). In the Motion, Plaintiff requests that, before adjudicating any of his claims, the Court grant him the extraordinary remedy of a preliminary injunction and order the New Mexico Corrections Department (NMCD) to drastically alter its current mail policy, particularly by allowing inmates to receive mail directly (and not only through scanned copies). The Court, however, finds that Plaintiff has not made the requisite "clear showing that [he] is entitled to such relief." Consequently, as set forth below, the Court recommends denying the Motion.[1]

**I. BACKGROUND**

    **A. From Las Vegas to Las Cruces**

"On the night of December 1, 2002," Plaintiff and Mike Bartoli went to the Las Vegas, Nevada, apartment of Daniel Stewart and his girlfriend, Mary Amina. *Antonetti v. Filson*, No. 3:17-cv-00621-MMD-CLB, 2021 WL 5853588, 2021 U.S. Dist. LEXIS 235782, at *2 (D. Nev. Dec. 9, 2021). "Bartoli demanded that Stewart and Amina go with him to meet Amina's brother

---

[1] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's Order of Reference. ECF 8.

at a bar to retrieve [Bartoli's stolen] shotgun." *Id.* But Stewart and Amina refused—with tragic consequences:

> Bartoli got angry and threatened to take Stewart and Amina's property. After Amina yelled at Bartoli, [Plaintiff] said, "you don't know who we are. We are from North Town." Amina responded, "you don't know who you're dealing with neither (sic)." [Plaintiff] then "pulled out a gun and shot" Stewart and Amina, killing Amina.

*Id.*[2] "A [Nevada] jury found [Plaintiff] guilty of first-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and possession of a firearm by an ex-felon." *Filson*, 2021 U.S. Dist. LEXIS 235782, at *2.[3] Plaintiff was sentenced to, *inter alia*, "two consecutive sentences of life without the possibility of parole." *Filson*, 2021 U.S. Dist. LEXIS 235782, at *1.[4]

Plaintiff, who is now forty-seven, has essentially spent the last 30 years in prison. Compl. [ECF 1] at 19 (representing that Plaintiff "has been in prison since about 1992–1993 to now"); Johnson, *supra* note 2 (observing that Plaintiff was "incarcerated in an adult maximum-security prison at age 16, after a juvenile judge certified him as an adult on grand larceny and battery by a

---

[2] According to Plaintiff, "that broad bit off more than she could chew" and "the other one should have died too." Erica Johnson, *Killer Avoids Death Penalty*, LAS VEGAS SUN (Nov. 26, 2003), https://lasvegassun.com/news/2003/nov/26/killer-avoids-death-penalty (also reporting Plaintiff's comment that "[t]hey got what they deserved as far as I'm concerned; it's too bad they didn't get finished the (expletive) off").

[3] Jurors, however, "decided against execution despite a nonchalant attitude displayed by [Plaintiff] during the penalty phase of his trial." Johnson, *supra* note 2 (observing that Plaintiff "laughed and smirked as one of his attorneys . . . begged jurors to spare his life" and that, although jurors "said they were offended by [Plaintiff's] courtroom antics," they simply "could not bring themselves to return with a death sentence").

[4] *See also Filson*, 2021 U.S. Dist. LEXIS 235782, at *3 (observing that "[t]he jury imposed a sentence of life without the possibility of parole for the first-degree murder conviction. And the state district court imposed a consecutive sentence of life without the possibility of parole for the first-degree murder deadly weapon enhancement, two consecutive sentences of 96 to 240 months for attempted murder and the deadly weapon enhancement, and 28 to 72 months for possession of a firearm by an ex-felon"). "In a separate trial, a jury convicted [Plaintiff] of the attempted murder of [his former roommate] Suzanne Smith"—a crime that occurred "less than a month before the shootings of Amina and Stewart." *Antonetti v. State*, No. 68312, 2017 WL 2633080, 2017 Nev. Unpub. LEXIS 457, at *1 (Nev. 2021); *Filson*, 2021 U.S. Dist. LEXIS 235782, at *5 (observing that Plaintiff "shot Smith nine times" after an argument over rent and a suggestion that Plaintiff should "move out of [her] house").

prisoner charge"). And unless Plaintiff can find the right "legal loophole"—or actually succeed in another escape attempt—Plaintiff will spend the rest of his life in prison. Johnson, *supra* note 2 (also relaying Plaintiff's statements that "[y]ou don't never let someone like me out . . . [t]hat's a boo-boo" and "[g]ingerbread man, catch me if you can" (internal quotation marks omitted)).[5]

Plaintiff represents that he is "an interstate compact inmate" who has been in the NMCD for over six years. ECF 5 at 1; Compl. at 22. Plaintiff was recently incarcerated at the Penitentiary of New Mexico (PNM) in Santa Fe. *See id.* at 1. In May 2023, Plaintiff notified the Court that he is now incarcerated at the Southern New Mexico Correctional Facility in Las Cruces. ECF 24.

**B. Complaint**

Plaintiff's thirty-five-page handwritten Complaint [ECF 1]—filed while he was still at PNM—alleges that "officials at [PNM] and [NMCD] violated his rights under, *inter alia*, the First Amendment, Eighth Amendment, and the Due Process Clause." ECF 6 at 1 (summarizing Plaintiff's Complaint). Plaintiff specifically alleges, *inter alia*, the following:

> Plaintiff was previously housed in the Predatory Behavior Management Program (PBMP), where he spent at least 39 days in solitary confinement without recreation, hygiene facilities, hot water, or proper ventilation. Plaintiff alleges his cell had mold and he had trouble breathing. Plaintiff further alleges he is unable to access religious books or services at PNM; prison officials are interfering with his legal mail and access to Courts; and he has not received his stimulus checks from the Internal Revenue Service.
> . . .
> The Complaint seeks unspecified damages and injunctive relief from [*inter alia*] 13 Defendants who are associated with NMCD and PNM [the 'Corrections Defendants'] . . . . Construed liberally, the Complaint alleges the supervisory Corrections Defendants failed to train the individual PNM officers and enacted policies (e.g., the PBMP solitary confinement program) that caused the constitutional violations. . . . .

---

[5] *See also Antonetti v. Neven*, No. 2:09-cv-01323-PMP-GWF, 2013 WL 944291, 2013 U.S. Dist. LEXIS 33156, at *8–9 (D. Nev. Mar. 11, 2013) (commenting that Plaintiff "was charged in November 2003 with . . . September 17, 2003, escape offenses" for "attempt[ing] to escape from [Nevada's] Clark County Detention Center (CCDC). . . . while awaiting trial for, *inter alia*, first-degree murder"); *Filson*, 2021 U.S. Dist. LEXIS 235782, at *36–37 (noting that a detention officer testified that "he 'found a hole in the window' of a module at the [CCDC] and [that] other officers 'located a rope and some hack saw blades and some saws and some gloves'—and "that [Plaintiff] 'had several cuts on his hand, consistent with scraping against his glass'").

*Id.* at 1–2 (also finding that "Plaintiff's claims against the Corrections Defendants survive initial review").[6]

Count V of Plaintiff's complaint alleges that Defendants violated Plaintiff's "1st Amendment rights to publications and mail [and] association[,] 14th Amendment due process[,] 1st Amendment retaliation[, and] 5th [Amendment] equal protection." *Id.* at 17. This count asserts, *inter alia*, that Defendants failed to provide Plaintiff with "photos of [his] wife/fiancé in bikini, lingerie[,] which showed <u>no</u> nudity, [and] books and magazines of the same" and that Defendants are otherwise restricting mail that should not qualify as "obscene, sexual, nude, or partially nude." *Id.* at 18 (emphasis in original) (quotation omitted). *Id.* at 17–22. This count (along with part of Count IV) also alleges that Defendants "put the wrong letters in the wrong envelopes"; "force[d] inmates to send out personal mail 'unopened'"; failed to send out Plaintiff's mail, including personal mail "to fiancé and family"; "rejected mail without doing the paperwork, or due process"; and allowed Plaintiff's mail to be "delayed an average of 20–30 days," with "some mail never given at all." *Id.* at 16, 20–23.

## II. PARTIES' PRIMARY ARGUMENTS

### A. Plaintiff's Arguments

"In conjunction with Counts IV and V that deal with legal mail and personal mail," Plaintiff represents, *inter alia*, that Corrections Defendants are (1) using the "Securus Digital Mail Center" for personal mail, resulting in Plaintiff not receiving mail from "various friends and family

---

[6] *Cf. Antonetti v. Santistefan*, No. 21-cv-279-DHU-SMV, 2023 WL 171787, 2023 U.S. Dist. LEXIS 5721, at *2–3 (D.N.M. Jan. 12, 2023) (Urias, J.) (finding Plaintiff's March 2021 complaint "d[id] not survive initial review" because it was "essentially a shotgun pleading—thirty-four pages challenging virtually every aspect of prison life without adequately connecting the conduct of the 30 defendants to the alleged violations of Plaintiff's constitutional rights," but nevertheless permitting Plaintiff to "file an amended civil rights complaint" that addressed these "conditions of confinement claims").

4

members"; and (2) "only provid[ing] [him] with *copies* of legal documents sent to him," while not permitting him to "see [or] observe what [confidential legal mail] is being copied and shredded." ECFs 5 at 1–2; 9 at 1–2 (emphasis added).[7]

Consequently, Plaintiff requests that the Court issue "an emergency order or temporary restraining order" (or take other necessary action) that (1) "prevent[s] NMCD from using 3rd party agencies" (i.e., Securus Technologies) "for personal mail";  (2) "allow[s] delivery of personal mail to prison facilities"; (3) "stop[s] the practice of copying and shredding legal mail";  and (4) requires the "transfer [of Plaintiff] to a prison that can provide mail [and] respect the constitution."  ECFs 5 at 1–2; 9 at 1–2.

### B. Corrections Defendants' Arguments

For their part, Corrections Defendants contend that "Plaintiff is unable to satisfy any of the burdens of proof predicate to entry of a preliminary injunction."  Resp. at 1–2.  They argue that Plaintiff is unlikely to succeed on the merits because (1) he "largely failed to exhaust his administrative remedies" (at least for ten out of twelve mail-related grievances that he has filed); (2) his claims regarding violations of prison regulations, state officials acting in their official capacities, and supervisor liability are insufficient to establish liability under 42 U.S.C. § 1983; and (3) he failed to "demonstrate that the use of Securus Technologies' services are [sic] not reasonably related to legitimate penological interests" (e.g., preventing "the introduction of contraband and drugs in New Mexico's prison facilities").  *Id.* at 13–19.

Corrections Defendants further contend that Plaintiff has failed to show that "the injury

---

[7] *Cf.* New Mexico Corrections Department – Memo to Offender Families: Inmate Mail Changes (Dec. 29, 2021), https://www.cd.nm.gov/ (notifying relatives that (1) "[b]eginning February 1st 2022, personal mail will no longer be accepted at state-run prison facilities," thus "[a]ll personal mail for inmates at these facilities should be addressed to [Securus Digital Mail Center in Tampa, Florida]"; and (2) "[p]rivileged mail (legal mail)" will "still be sent to the applicable facility" and " will be opened in the presence of the inmate and checked for contraband").

complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm"—something that "is not an easy burden to fulfill," as "merely serious or substantial" harm is insufficient. *Id.* at 19–20 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). Finally, Corrections Defendants assert that the balance of equities and public interest favors denying an injunction—particularly in light of the "legitimate interest in prison security" and the "significant fiscal impact and . . . logistical hardships" associated with such a "significant[ ]"—and legally "disfavored"—overhaul of the status quo. *Id.* at 20–21.

## III. DISCUSSION

### A. Applicable Legal Standards

"A preliminary injunction is an *extraordinary remedy* that 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1278 n.15 (10th Cir. 2022) (emphasis added) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008)). "A [plaintiff] seeking a preliminary injunction must prove that *all four* of the equitable factors weigh in [his] favor." *Id.* at 1278 (emphasis in original) (quotation omitted). Specifically, such a plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Id.* at 1277–78 (quotation omitted) (also observing that "the final two factors merge when the Government is the opposing party"). Furthermore, "the movant must establish a relationship between the injury claimed in [his] motion and the conduct asserted in [his] complaint." *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quotation omitted).

In addition to "consider[ing] a preliminary injunction to be an extraordinary remedy," the Tenth Circuit "caution[s] courts against granting injunctions that alter the status quo or that require

the nonmoving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs." *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (quotations omitted) (requiring "the movant [to] make a heightened showing of the above four factors" for such "disfavored" injunctions); *see also Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (observing that the "limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held" (quotation omitted)); *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll.*, 23 F.4th 1262, 1274 (10th Cir. 2022) (noting that "[p]reliminary injunctions are typically 'prohibitory' in the sense that they prohibit the defendant from doing something").

The Tenth Circuit "review[s] the district court's decision to deny a preliminary injunction for abuse of discretion." *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899 (10th Cir. 2022). And "[a]n abuse of discretion occurs where a decision is premised on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Denver Homeless*, 32 F.4th at 1278 (quotation omitted).

### B.  Analysis

The Court finds that Plaintiff has not made the requisite "clear showing that [he] is entitled to" the "extraordinary remedy" of a preliminary injunction, particularly one that orders NMCD to allow inmates (or at least Plaintiff) to receive mail directly. *Id.* at 1278 n.15. First, the Court finds the Plaintiff is not "likely to succeed on the merits," *id.* at 1277—particularly those merits "in [his] complaint" that relate to the "injury claimed in [his] motion." *Little*, 607 F.3d at 1251. For instance, Plaintiff is not likely to succeed in proving that NMCD's policy of providing inmates with only scanned copies of their mail is unconstitutional. Indeed, none of the cases cited by Plaintiff suggest that it is unconstitutional to provide inmates with only copies of their mail—

security concerns notwithstanding.  *See* ECFs 5, 9.[8]

Plaintiff has also failed to show that—unless NMCD is forced to change its policy to allow Plaintiff to receive *original* copies of his mail—he will likely suffer "irreparable harm" (i.e., harm that "cannot be compensated after the fact by money damages").  *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (observing that "[d]emonstrating irreparable harm is not an easy burden to fulfill"—particularly as "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from *irreparable* injury that will *surely result* without [its] issuance" (emphasis added) (quotations omitted)).  Regarding past mail that has been allegedly lost or unreasonably delayed, as Corrections Defendants note, Plaintiff "has the means and ability to communicate with Securus Technologies about the whereabouts of his purportedly misplaced personal mail."  Resp. at 17.[9]  Regarding the shredding of legal mail, the Court agrees that there are other "methods of authentication available under Article IX of the Federal Rules of Evidence"—and that Plaintiff will therefore not likely be irreparably harmed by having to use copies of legal documents in future litigation.  Resp. at 3.  And as is apparent in the briefing, Plaintiff should have no problem using the prison's grievance process to pursue future mail-related grievances.  *See* ECF 17-1 through 17-10.[10]

---

[8] *See also Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (observing that "[i]nmates have a First Amendment right to receive information while in prison"—but only "to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison"); *Turner v. Safley*, 482 U.S. 78, 89 (1987) (noting that "when a prison regulation impinges on inmates' constitutional right[]" to receive information, "the regulation is valid if it is *reasonably related* to legitimate penological interests" (emphasis added)); *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (same); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (stating that courts must "accord *substantial deference* to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them" (emphasis added)).

[9] *See also* ECF 16 (containing over 225 pages of NMCD documentation showing mail logs for personal and legal mail sent out by Plaintiff and legal mail received by Plaintiff").

[10] *See also* ECF 16 at 58–251 (containing legal mail receipts from January 2022 through March 2023 in which Plaintiff repeatedly acknowledges that his legal mail was "[o]pened in [his] presence by the Warden or designee in accordance

Finally, the Court reiterates Tenth Circuit's "caution . . . against granting [such an] injunction[ ] that alter[s] the status quo." *Tyson Foods,* 565 F.3d at 776. Indeed, because all NMCD inmates' non-privileged mail is currently processed in Tampa, Florida, a decision requiring that NCMD inmates receive mail directly (as opposed to through scanned copies) would upend the status quo by forcing NMCD to overhaul its physical mail-sorting operations to handle the non-privileged mail too. Plaintiff fails to explain why such a drastic, court-mandated change at this juncture would serve the public interest or why the Court should deviate from the "substantial deference" that the Court must "accord . . . to the professional judgment of [NMCD] prison administrators" as they seek to keep their prisoners safe and their prisons secure. *Overton*, 539 U.S. at 132.

In sum, Plaintiff is not entitled to the extraordinary remedy of a preliminary injunction. Instead, to the extent that Plaintiff is entitled to any relief associated with his mail-related claims, he must prove his entitlement through traditional, rather than extraordinary, litigation.

## IV. CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion [ECFs 5, 9] be **DENIED**.

---

with ACA [American Correctional Association] expected practices to determine if the correspondence is counterfeit and/or contains contraband"—and that Plaintiff was "informed of the reason(s) [his] legal/privileged mail was opened" and that he had "the right to appeal the opening of [his] legal/privileged mail").

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.